2026 IL App (1st) 240472-U
Order filed: March 25, 2026

FIRST DISTRICT
THIRD DIVISION

No. 1-24-0472

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 60031 |
| | ) | |
| BRIGHT IBEH, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for aggravated battery, holding that the trial court committed no abuse of discretion by denying his motion for a continuance of trial to hire substitute counsel.

¶ 2    Following a bench trial, the court convicted defendant, Bright Ibeh, of two counts of aggravated battery and sentenced him to two years of probation. On appeal, defendant argues that the trial court's denial of his motion for a continuance of the trial to hire substitute counsel violated his sixth amendment right to counsel of his choice. We affirm.

¶ 3 On February 17, 2022, the State charged defendant with two counts of aggravated battery arising from a November 2021 incident in which he allegedly threw urine onto the 61-year-old victim while she was walking her dog on the sidewalk. One count charged defendant with a violation of section 12-3.05(c) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3.05(c) (West 2022)), which provides that a person commits aggravated battery when, in committing a battery other than the discharge of a firearm, he batters a person on a public way. The second count charged him with a violation of section 12-3.05(d)(1) of the Code, which provides that a person commits aggravated battery when, in committing a battery other than the discharge of a firearm, he knows the victim to be 60 years of age or older. *Id.* § 12-3.05(d)(1).

¶ 4 On February 28, 2022, defendant pleaded not guilty and was appointed a public defender because he stated he was not working and could not afford to hire a private attorney. The court continued the case to April 19, 2022.

¶ 5 On April 19, the State provided a status on discovery and the court continued the case to June 17, 2022. On June 17, the court noted that this case "seem[ed] to have fallen off the call momentarily" and continued the case to July 18 and later continued it to August 19. On August 19, the State provided a further status on discovery and, by agreement, the case was continued to October 20. On October 20, the parties, by agreement, continued the case to December 13 for defendant's answer to discovery and pretrial motions. On December 13, the case was continued to February 9, 2023. On February 9, the public defender sought to file an answer to discovery and by agreement, the court continued this case to March 8 for a conference under Illinois Supreme Court Rule 402 (eff. Jul. 1, 2012). On March 8, the public defender stated that defendant was no longer asking for a Rule 402 conference and requested a trial date. By agreement, the court set a trial date of May 4, 2023.

¶ 6 On May 4, the public defender stated, "This matter was set for trial. But given the conflict in the court's schedule and speaking with the state's attorney, we are not going forward." The trial was rescheduled to June 14, 2023. On June 14, the court found that defendant violated an order of protection, increased his bond, and scheduled a hearing on the State's motion to admit evidence of other crimes. On July 27, the court held a hearing and granted the State's motion to admit evidence of other crimes. The trial was rescheduled to September 8, 2023.

¶ 7 On September 8, defendant failed to appear. The public defender told the court that he had informed defendant about the court date but had not heard back from him. The public defender also noted that defendant had been late to court a number of times. The court issued a warrant for defendant's arrest and continued the case to October 10, 2023.

¶ 8 On September 11, 2023, defendant appeared in the courtroom, and the public defender stated that defendant told him he did not show up for the previous trial date because he never received the message that the trial had been switched to that date. The public defender said he believed defendant. The State responded that this was not the first time that defendant arrived late to court or on the wrong date. The court recalled the warrant and rescheduled the trial for October 13.

¶ 9 On September 29, 2023, defendant filed a motion stating: "I work full time now and now I can afford a private attorney, I need this Honorable Court to give me time to hire my private attorney and drop my public defender."

¶ 10 On October 4, 2023, the court held a hearing on the motion. The public defender explained that defendant would like to "advance and reset the trial date because he's going to hire private counsel. The case came in and up until very recently, he was not working, but he has secured a

full-time job and does believe that he will have eventually the funds and does wish to hire a lawyer." Thereafter the following colloquy occurred:

"THE COURT: Well, the case has been pending on my call since February 28, 2022. By my math, that was over 18 months ago. This is a Class–have you talked to anybody, [defendant]?"

\* \* \*

THE COURT: Have you talked [to] any lawyers—

THE DEFENDANT: Yes.

THE COURT:—about representing you.

THE DEFENDANT: Yes.

THE COURT: To whom have you spoken?

THE DEFENDANT: Well, I asked him to hold –

THE COURT: No, to whom have you spoken? Who is the lawyer you have spoken to?

THE DEFENDANT: I have his name on the card.

THE COURT: That's what I'm asking.

THE DEFENDANT: Daniel Radakovich.

THE COURT: Have you hired Mr. Radakovich?

THE DEFENDANT: I asked him to hold should I get permission from the Court because I can't go ahead and hire him."

¶ 11    In ruling on defendant's request, the court stated:

"The matter was set for bench trial on May 4th, 2023. I don't know why it didn't go. It was set on June 14th, 2023. I don't know why it didn't go. On that day, it continued to June 21,

a motion–-for Zoom for motion for State's other crimes evidence. There was a hearing on that held only July 27th, 2023. The matter was set for trial on September 11th. Somebody advanced the case on August 9. It was set for 9/8, [defendant] didn't show up. On 9/11, I quashed and recalled the warrant, set the matter for trial for October 13. Here it is, October 4, nine days before trial. Your motion is denied. We're going to trial on October 13th. You want to hire Mr. Radakovich and he wants to represent you on that day, I'll certainly permit him to do that, but we're going to trial on October 13th."

¶ 12    The court held a bench trial on October 13 and October 27, 2023, during which defendant was represented by the public defender. The State called three witnesses: the victim, Spencer Block, and Detective Daniel Rodriguez. The victim testified that she was 61 years old and was walking her dog in the area of 5300 North Ashland Avenue at about 7:30 p.m. on November 6, 2021. Defendant approached her on the sidewalk carrying a large cup. The victim looked defendant in the eyes and smiled at him. He threw the liquid contents of the cup at her and ran away. The liquid smelled like urine. It covered her face, hair, and upper body and burned her eyes.

¶ 13    Block testified as an other-crimes witness that at about 7:40 p.m. on December 3, 2021, he was walking his dogs in the area around 1600 West Rascher Avenue when defendant approached him at the corner of Rascher and Ashland Avenue and threw the liquid contents of a plastic bottle at him. Block believed the liquid was urine based on the appearance and smell.

¶ 14    Rodriguez testified that defendant was apprehended on February 4, 2022, and spoke with officers. Defendant described a number of instances where he was attacked by dogs as they were being walked by their owners. On one such instance, he threw a liquid at the dog to protect himself. He did not throw the liquid at the dog's owner. When Rodriguez asked defendant what the liquid was, defendant did not answer.

¶ 15    Defendant testified that he had never seen the victim or Block. He denied both incidents.

¶ 16    The trial court found defendant guilty of both counts of aggravated battery and sentenced him to two years of probation. Defendant filed this appeal.

¶ 17    On appeal, defendant argues that the trial court's denial of his request for a continuance of his trial date to obtain substitute counsel, without evidence of delaying tactics and without an adequate inquiry into his reasons for seeking new counsel, violated his constitutional right to counsel of his choice.

¶ 18    Initially, we note that defendant forfeited review of the denial of his motion for a continuance to procure substitute counsel by failing to raise the issue in his posttrial motion. *People v. Jenkins*, 2020 IL App (1st) 172422, ¶ 10. Defendant argues that we should consider the issue as plain error. Under the plain error doctrine, we may review alleged errors that have not been preserved for review where they affect substantial rights. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The plain error doctrine allows us to remedy a "clear or obvious error" where the evidence is so closely balanced that the error threatened to tip the scales of justice against defendant, regardless of the seriousness of the error, or where the error was so serious as to affect the fairness of his trial and the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The denial of the right to counsel of choice is a fundamental right reviewable under the second prong of the plain error doctrine. *People v. Burrell*, 228 Ill. App. 3d 133, 142 (1992).  We proceed to address the issue.

¶ 19    Both the United States and Illinois Constitution guarantee criminal defendants the right to retained counsel of choice. U.S. Const. amend. VI; Ill. Const. 1970, art. I, § 8. However, this right is not absolute and cannot be used to " 'thwart the administration of justice, or to otherwise embarrass the effective prosecution of crime.' " *People v. Bingham*, 364 Ill. App. 3d 642, 645

(2006) (quoting *People v. Solomon*, 24 Ill. 2d 586, 590 (1962)). Thus, the court must balance the defendant's right to counsel with the need for the efficient administration of justice. *Id.* The determination whether to grant a continuance for substitution of counsel is a matter left to the discretion of the trial court, which will not be disturbed absent an abuse of that discretion. *People v. Segoviano*, 189 Ill. 2d 228, 245 (2000). An abuse of discretion will be found where "the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Baez*, 241 Ill. 2d 44, 106 (2011).

¶ 20    When addressing a motion for a continuance to procure substitute counsel, the court should inquire into whether defendant has identified substitute counsel "ready, willing, and able to make an unconditional entry of appearance instanter." *Burrell*, 228 Ill. App. 3d at 142. Our supreme court has held that a trial court will not be found to have abused its discretion in denying the motion "in the absence of ready and willing substitute counsel." *Segoviano*, 189 Ill. 2d at 245.

¶ 21    If defendant has identified such substitute counsel, the court considers various other factors in determining whether to grant the motion for a continuance. Such factors include "whether defendant articulates an acceptable reason for desiring new counsel; whether the defendant has continuously been in custody; whether he has informed the trial court of his efforts to obtain counsel; whether he has cooperated with current counsel; and the length of time defendant has been represented by current counsel." *People v. Tucker*, 382 Ill. App. 3d 916, 920 (2008).

¶ 22    In the present case, defendant filed his motion for a continuance of the trial on September 29, 2023, stating that he was now working full-time and could afford a private attorney. Defendant sought the continuance to give him "time" to hire a private attorney and "drop" his public defender. Defendant did not specify how long of a continuance was needed. At the hearing on the motion on

October 4, 2023, which was nine days before the scheduled trial, the public defender explained that defendant "believe[s]" that he will "eventually" have the funds to hire a private attorney. The court then engaged in a colloquy with defendant, asking him whether he had actually spoken to a new attorney about representing him. Defendant stated that he had spoken with an attorney named Daniel Radakovich but had not hired him yet. Instead, defendant asked Radakovich to "hold." Defendant did not state whether Radakovich had agreed to the "hold" or to represent him in the future, nor did he state how much time he would need to procure the funds to retain Radakovich.

¶ 23    As discussed, the prerequisite for the granting of a continuance to procure substitute counsel is that the substitute counsel is ready, willing, and able to make an *immediate*, unconditional entry of appearance. *Segoviano*, 189 Ill. 2d at 245; *People v. Curry*, 2013 IL App (4th) 120724, ¶ 51. The trial court's inquiry of defendant here revealed only the *possibility* that defendant would hire Radakovich at some indeterminate time once the continuance was granted and he had earned enough money in his new job to afford him. The court was under no obligation to indefinitely continue the trial until defendant could procure the funds to retain an attorney, where the case had been on the court's call for over 18 months and continued numerous times already and where defendant had failed to appear for an earlier trial date. In the absence of substitute counsel ready, willing and able to make an unconditional appearance without delay, the court did not abuse its discretion by denying the motion for a continuance. *Id.*

¶ 24    Defendant argues, though, that even in the absence of substitute counsel ready, willing, and able to make an unconditional appearance instanter, we have held that reversal of a trial court's denial of a continuance is warranted where the court failed to inquire into whether defendant was using the request as a delaying tactic. See *e.g.*, *People v. Adams*, 2016 IL App (1st) 141135, ¶ 15. Defendant argues that the trial court here failed to conduct a meaningful, thorough inquiry into

whether his request for a continuance was a delaying tactic, and therefore that we should reverse his conviction and remand for a new trial.

¶ 25    We decline to follow *Adams*. In *Adams*, 2016 IL App (1st) 141135, ¶ 1, the defendant sought a continuance on the day of trial to seek private counsel. The trial court denied the request without any further inquiry because it was made on the day of trial and "everybody is here." *Id.* ¶ 4. The appellate court reversed and remanded for a new trial. *Id.* ¶ 17. In so ruling, the appellate court relied on the holding in an earlier case, *People v. Basler*, 304 Ill. App. 3d 230 (1989), that even where new counsel is not identified, reversal of a trial court's denial of a motion for a continuance to secure substitute counsel is warranted where the trial court did not inquire into whether the motion was a delaying tactic. *Adams*, 2016 IL App (1st) 141335, ¶ 15 (citing *Basler*, 304 Ill. App. 3d at 232-33).

¶ 26    *Adams* erred in relying on *Basler*, which was decided *prior* to our Illinois Supreme Court's opinion in *Segoviano*. The supreme court made clear in *Segoviano* that the trial court does not abuse its discretion in denying a motion for a continuance to secure substitute counsel where its inquiry into the motion reveals that no counsel stands ready to make an unconditional appearance without delay. Decisions of the Illinois Supreme Court are binding on all lower courts (*People v. Artis*, 232 Ill. 2d 156, 164 (2009)) and therefore we follow *Segoviano* instead of *Adams*. Our holding is in accordance with other authority similarly noting that *Adams* failed to adhere to *Segoviano*. See *e.g.*, *People v. Ramsey*, 2018 IL App (2d) 151071, ¶ 30.

¶ 27    Moreover, even under *Adams*, we would not reverse the trial court here because its inquiry revealed evidence that defendant's motion was a dilatory tactic. Specifically, the court noted after its inquiry of defendant that the motion was dilatory where it was made only nine days before trial and after there had been numerous previous delays over 18 months, one of which was occasioned

when defendant failed to appear on an earlier trial date and a warrant was issued for his arrest. Defendant argues, though, that "the fact that most of the [prior] continuances were not attributable to [him], he requested new counsel for the first time before trial, and identified the new counsel he wished to represent him shows [he] did not intend to delay trial." However, defendant did not actually request new counsel for the first time *before* the scheduled trial but instead requested it *after* he failed to appear on the original trial date. Also, although defendant identified the new counsel he *wished* to represent him, he did not indicate that he had the money to hire the attorney or that a retainer agreement had been reached nor did he state when the attorney would be ready for trial. Instead, he admitted to the court that the attorney was on an indefinite "hold." On these facts, a reasonable person could agree with the court that the motion was a delaying tactic and therefore the denial of the motion did not constitute an abuse of discretion. *Baez*, 241 Ill. 2d at 106.

¶ 28 Defendant cites two other cases, *People v. Bingham*, 364 Ill. App. 3d 62 (2006) and *People v. Heineman*, 2021 IL App (2d) 190689, both of which are inapposite. In *Bingham*, 364 Ill. App. 3d at 644, the defendant sought a continuance to retain substitute counsel who had previously represented him, which the trial court denied. The appellate court reversed and remanded because the trial court failed to conduct an inquiry into the circumstances and purposes of the motion before making its ruling. *Id.* at 645. We have subsequently construed *Bingham* as follows:

> " '*Bingham* should be understood as concluding, *under the particular circumstances of that case*, that an inquiry by the trial court might well have disclosed that the attorney the defendant identified by name (whose involvement in the case the prosecutor corroborated) would, in fact, be 'ready and willing' substitute counsel.' (Emphasis added.)" *People v. Curry*, 2013 IL App (4th) 120724, ¶ 51 (quoting *People v. Montgomery*, 373 Ill. App. 3d 1104, 1111 (2007)).

¶ 29    We have further noted that *Bingham* "did not, however, modify our long-standing rule that a trial court does not abuse its discretion by denying a defendant's motion for continuance where new counsel does not stand 'ready, willing and able to make an unconditional entry of appearance instanter.' " *Id.* (quoting *People v. Koss*, 52 Ill. App. 3d 605, 607-08 (1977)).

¶ 30    In the present case, unlike in *Bingham*, the trial court's inquiry revealed that substitute counsel was not ready and willing to make an immediate appearance on behalf of defendant.

¶ 31    In *Heineman*, 2021 IL App (2d) 190689, the appellate court held that the trial court abused its discretion in denying defendant's motion for a continuance to retain substitute counsel, where defendant identified counsel that was ready, willing, and able to take over his representation (*Id.* ¶ 85) and where the record did not support the court's stated reasons that the motion was a delaying tactic. *Id.* ¶ 84. *Heineman* is factually distinguishable because, as discussed, the trial court's inquiry of defendant here revealed that he had not yet identified substitute counsel ready, willing, and able to make an unconditional entry of appearance instanter and the record supported a finding that defendant's motion was made for purposes of delay.

¶ 32    For all the foregoing reasons, we affirm the circuit court.

¶ 33    Affirmed.